UNITED STATES, Appellant

v.

PAUL G. BUNTING, Private First Class, U. S. Marine Corps, Appellee

4 USCMA 84, 15 CMR 84

No. 3387

Decided March 26, 1954

CDR Robert F. Milota, USN, and CDR Thomas E. Blade, USN, for Appellant.

Edwin K. Steers, Esq., CDR Howard A. Patrick, USN, and CDR Francis X. Driscoll, USN, for Appellee.

## Opinion of the Court

ROBERT E. QUINN, Chief Judge:

A general court-martial in Japan convicted the accused of unpremeditated murder, in violation of Article 118, Uniform Code of Military Justice, 50 USC § 712, and of a number of other

offenses in violation of the Code. He was sentenced to dishonorable discharge, total forfeitures, and confinement at hard labor for life. The convening authority approved the sentence. On review, a board of review held that the court was appointed by an officer having no legal authority to convene courts-martial. It set aside the proceedings, and ordered a rehearing. The Judge Advocate General certified to this Court the following question:

"Was the appointing order legally effective to confer upon the general court-martial in this case the jurisdiction to act?"

In pertinent part, the order appointing the court reads as follows:

"COMMANDER NAVAL FORCES, FAR EAST

Tokyo, Japan
February 7, 1952.

"Pursuant to authority contained in Secretary of Navy letter (JAG:I: OVB:bp: of 26 April 1951), a general court-martial is hereby ordered to convene . . .

R. A. OFSTIE
REAR ADMIRAL, U. S. NAVY."

An order, dated April 2, 1952, directed that the accused be brought to trial before this court. This order was captioned in the same form as the order appointing the court, and it was signed in the same way. However, the accused contends that, on the critical dates, Admiral Ofstie did not legally occupy the office of Commander Naval Forces, Far East. The core of this contention is the actual status of Vice Admiral C. Turner Joy.

In 1949, under orders from competent authority, Admiral Joy assumed command of the Naval Forces, Far East. In April 1951, the Secretary of the Navy designated the Commander Naval Forces, Far East, as a competent authority to convene general courts-martial. That same month, the Chief of Naval Operations directed that, for the purposes of Naval administration, the Commander Naval Forces, Far East, had the status of an officer of the Pacific Fleet, and, for such purposes, was under administrative control of the Commander-in-Chief, Pacific Fleet. A month later, Admiral Ofstie became Chief of Staff to Admiral Joy.

Apparently, no change in the designation of office of either Admiral Joy or Admiral Ofstie was accomplished by higher authority until after the critical period of this case. However, in June 1951, Admiral Joy was ordered to undertake another duty. General Matthew B. Ridgway, Commander-in-Chief, United Nations Command, designated Admiral Joy as the Senior United States Delegate and official spokesman for the United Nations Delegation in the armistice negotiations in Korea. Upon learning of this designation, Admiral Joy discussed his assignment with Admiral Sherman, Chief of Naval operations, and informed him that he would be required to relinquish his command to Admiral Ofstie.

In the period from July 9, 1951, to April 25, 1952, Admiral Joy was primarily in Korea. He was generally either attending sessions of the armistice delegates at the truce site or was at the United Nations advance base camp in Munsan; but at times, which are not set out in the record, he was in Tokyo. However, in the interval between January 13 and February 13, 1952, he was almost continuously in Korea. According to Admiral Joy's testimony, in his absence the functions of the Commander Naval Forces, Far East, were exercised by Admiral Ofstie, who signed as "Acting Commander Naval Forces, Far East, in practically all administrative matters." This testimony was amplified by Admiral Ofstie. He stated that he "exercised those command functions at the . . . verbal directions of Vice Admiral Joy on his departure, and by reason of the fact that [he] was chief of staff and second in command previously."

A report of Admiral Joy's departure for Korea was made through normal reporting channels. At command headquarters, Admiral Joy's flag was hauled down, and Admiral Ofstie's hoisted in its stead. Thereafter, Admiral Ofstie "assumed the function of ComNavFE in dealings with the higher command, the Commander-in-Chief, Far East."

86

In July 1952, the Judge Advocate General of the Navy requested advice as to whether the officer who signed the order of February 7, 1952, convening the court had "temporarily succeeded to command." The radio response to this inquiry was "affirmative."

During the period of his duty as Senior United Nations Delegate, Admiral Joy signed, as Commander Naval Forces, Far East, some papers "having to do with awards," and Admiral Ofstie's title as Chief of Staff appears on some correspondence on file in the office of the Chief of Naval Operations. No change of office was noted on the Roster of Officers of the command for February and March 1952. However, Admiral Ofstie considered Admiral Joy as being relieved "Temporarily . . . due to absence from his command post."

At an undisclosed date prior to Admiral Joy's departure for Korea, the Commander Seventh Fleet was placed under the operational control of Commander Naval Forces, Far East. On February 7, 1952, the commander of this fleet was Vice Admiral Martin. On that day Admiral Martin was present with his command which was in Korea. Although under the operational control of Commander Naval Forces, Far East, the Commander Seventh Fleet was under the administrative control of the Commander-in-Chief, Pacific Fleet. Insofar as its authority was concerned, the Seventh Fleet was a subordinate command of the Commander Naval Forces, Far East. With some minor exceptions, the area of the Naval Forces, Far East, command was regarded as coterminous with the United Nations command.

No one questions the authority of the Commander Naval Forces, Far East, to convene general courts-martial. In accordance with Article 22, Uniform Code of Military Justice, 50 USC § 586, he was properly granted such authority by the Secretary of the Navy, almost a year before the convening of the court which tried the accused. However, the grant of authority is to the office, and not to the particular person who occupies the office at the time of the grant.

Cf. Manual for Courts-Martial, United States, 1951, paragraph 5a(5), and paragraph 84b. The accused maintains that either Admiral Joy or Admiral Martin was in actual command, while the Government urges that Admiral Ofstie occupied the office at all times important to this case. This line of division excludes the possibility that Admiral Joy occupied the office, but delegated his authority to convene a court to Admiral Ofstie. In the traditional service view, such delegation of authority would be prohibited. Naval Digest, 1916, page 140; Winthrop's Military Law and Precedents, 2d ed, 1920 Reprint, page 67. We need not inquire into the legal correctness of this position. Suffice it, that the reference of the charges for trial requires the exercise of a judicial judgment, and consequently the power to refer would be clearly nondelegable. See Runkle v. United States, 122 US 543. In this case, Admiral Ofstie not only convened the court, but also referred the charges for trial. The considerations affecting his right to take this action are the same as those relating to his power to convene the court. Consequently, for the purposes of this case, we treat the two functions as one.

Unquestionably, Admiral Joy was the duly designated Commander Naval Forces, Far East. According to his own testimony, and the Roster of Officers, he was never relieved of this assignment. However, the Manual empowers the services to provide for a devolution of command in ways other than by order of competent authority. Manual for Courts-Martial, United States, 1951, paragraph 5a(5). Navy regulations establish such patterns of succession and grant to the successor the same authority as the officer succeeded. Navy Regulations, 1948, Articles 1322, 1369, 1371, 1378.

Navy regulations expressly authorize a Chief of Staff to succeed to command. Thus, Article 1369 empowers that officer to succeed to all functions of command, if he is next in rank and otherwise eligible as provided by the regulations. Of the other articles, Article 1371 is particularly applicable to the

position of Commander Naval Forces, Far East. That Article reads as follows:

"1371. Succession to Command of a Fleet or Subdivision of a Fleet.

"1. In the event of the incapacity or death of a commander in chief of a fleet, or of a commander of a subdivision of a fleet, or when such officer is absent from his command and so directs, the senior line officer of the Navy, eligible for command at sea, in the fleet or subdivision of the fleet, shall succeed to the command thereof, unless succession to command by a deputy or other officer has been prescribed by competent authority.

"2. During the absence of a commander in chief or of a commander of a subdivision of a fleet, and when such officer has not directed that he be succeeded in command as provided in paragraph 1, the chief of staff or chief staff officer shall have authority to issue the orders required to carry on the established routine and to perform the administrative functions of the command; but this shall not be construed to limit the authority and responsibility of the senior officer present in emergencies or other unforeseen situations which demand his action."

The accused contends that Articles 1369 and 1371 are inapplicable because none of the conditions which would make succession operative were present. He maintains that Admiral Joy was not dead, incapacitated or absent from his command. Since Admiral Ofstie predicated his assumption of command particularly on the fact that Admiral Joy was "Temporarily" absent from his command, we first consider whether this condition obtained.

The accused argues that the phrase "absent from his command" contemplates a physical absence ■■■■■ ■ from the limits of the entire command; and since Admiral Joy was physically within the geographical area of his command, he cannot be regarded as absent therefrom. We are unable to accept this restrictive interpretation.

**88**

The efficient operation of a military unit, especially in combat, requires that the commanding officer be in full and effective control of his organization. If his circumstances are such that he is unable to give his undivided attention and considered judgment to the functions of the command, there is certainly some basis for a succession of command. Patently, Admiral Joy was in such a situation when in Korea as the Senior United Nations Delegate. The multitude of responsibilities affecting the command could not possibly be submitted to him for prompt decision. It goes without saying that while at the advance site of the United Nations Delegation in Korea, or at the truce table itself, Admiral Joy could not give even minimal consideration to those matters. Admiral Joy realized himself that his presence in Korea would so interfere with the performance of his duties as Commander Naval Forces, Far East, that he would be required to relinquish the command to Admiral Ofstie, and he so informed Admiral Sherman, the Chief of Naval Operations. Consequently, we conclude that Admiral Joy was absent from his command within the meaning of Article 1371 during the time that he was in Korea in the performance of his duties as Senior United Nations Delegate. This conclusion is not out of harmony with Navy rulings that Article 1371 is inoperative when an officer is temporarily absent from his headquarters but "still functioning" in his official capacity within the geographical boundaries of his command. See: Letter from the Judge Advocate General of the Navy, November 23, 1951, Subject: Review Authority of Courts-Martial (File No.: JAG:I:INK: GI:WAC:nam). The difference lies in the continued functioning as commander. The record here incontrovertibly shows that Admiral Joy did not, and practically could not, function as commander while in active performance of his duties as Senior Delegate. Under these circumstances, we hold that Article 1371 became operative during Admiral Joy's absence from his command.

Careful analysis of Article 1371 indicates two alternatives of succession,

when succession is not prescribed by competent authority. The ■ first provides that when the commander is absent from his command, and he so directs, the senior line officer eligible for command at sea will fully succeed to command. The accused contends that Admiral Martin and not Admiral Ofstie was the senior line officer, and that only the former could succeed to the command. However, granting Admiral Martin's seniority, such seniority alone would not make this part of Article 1371 operative. Two other factors must be present for full succession:

(a) Absence from command; and
(b) A direction by the commander that the senior line officer succeed him.

The direction in this case was not to Admiral Martin but to Admiral Ofstie. Consequently, one of the two requirements is absent. Therefore, we must look to the second alternative provided by the Article.

When the commanding officer is absent and does not direct the senior line officer to succeed to command, the chief of staff has "authority to issue the orders required to carry on the established routine and to perform the administrative functions of the command," subject to action in emergencies or unforeseen situations by the senior line officer present. This provision marks a line of demarcation between administrative and operational succession to command. Such a division is well-recognized in the Naval establishment and finds expression on the highest level. See Navy Regulations, 1948, Chapter I; Navy Department General Order No. 9, April 25, 1951. Evidence of the distinction appears in this very case. Thus, the Commander-in-Chief of the Pacific Fleet maintained administrative control over the Commander, Seventh Fleet, but operational control was delegated to Commander Naval Forces, Far East. As related to succession of command, the distinction is further emphasized by Article 0606, which reads as follows:

"0606. Authority within Commands.

In the exercise of his authority, the senior officer present shall not normally concern himself with the administrative matters within commands other than his own, except to the extent necessary to secure such uniformity and coordination of effort as may be required."

See also: Articles 0636 and 0638, Navy Regulations, 1948. Consequently, as Chief of Staff, Admiral Ofstie was entitled to act in at least administrative matters in the absence of Admiral Joy under the authority of Article 1371 even though he could not succeed to all functions of command under the provisions of Article 1369. If the convening of a general court-martial can properly be considered administrative in character then Admiral Ofstie clearly had authority to convene the court which tried the accused.

Naval regulations do not specifically classify particular actions as operational or administrative. ■ However, we are not without official guidance in determining the proper classification of the function of convening a court-martial. We find in the Dictionary of United States Military Terms for Joint Usage, First Revision, issued by the Joint Chiefs of Staff, in June 1950, the following instructive definitions:[1]

"Operational Control—Comprises those functions of command involving the composition of subordinate forces, the assignment of tasks, the designation of objectives and the authoritative direction necessary to accomplish the mission. Operational control should be exercised by the use of the assigned normal organizational units through their responsible com-

[1] These definitions are slightly different in phraseology, but identical in substance with those contained in the Second Revision issued April 1953, by the Departments of Army, Navy, and Air Force. The latter were not used because the second revision was published subsequent to the dates with which we are concerned, and we desire to dispel all doubt as to the meaning of the particular terms during the period in issue.

manders or through the commanders of subordinate forces established by the commander exercising operational control. It does not include such matters as administration, discipline, internal organization, and unit training, except when a subordinate commander requests assistance."

"Administration—1. A term which comprises the management of all phases of military operations not directly involved in tactics and strategy. 2. Interior management of units."

"Control, Administrative—Control of administration over subordinate or other organizations pertaining to personnel management, supply, services, and other matters not included in the operational missions of the subordinate or other organizations."

Applying these definitions to our problem, we must conclude that the court-martial function is administrative rather than operational in character. Hence, under the authority of Article 1371, during the absence of Admiral Joy, Admiral Ofstie had the power to convene a general court-martial in his own right. Such exercise of power is consistent with, and explains the exercise of the command functions by Admiral Joy during some of the time he served as Senior United Nations Delegate. The record shows he was not continuously in Korea. At such times as he returned to his headquarters, he necessarily resumed command. Admiral Ofstie would then be divested of his authority under Article 1371; undoubtedly that is the explanation of his signature as Chief of Staff on some of the correspondence from the Commander Naval Forces, Far East, to the Chief of Naval Operations in February and March 1952.

For the foregoing reasons, the certified question is answered in the affirmative. The decision of the board of review on the jurisdictional issue is reversed, and the record of trial is returned to The Judge Advocate General of the Navy for resubmission to the board of review for consideration of the case on the merits.

Judges LATIMER and BROSMAN concur.