UNITED STATES, Appellee

v.

JOHNNIE WILLIAMS, JR., Private E–2, U. S. Army,
Appellant

6 USCMA 243, 19 CMR 369

No. 6371

Decided August 12, 1955

*Lieutenant Colonel Joseph L. Chalk* argued the cause for Appellant, Accused. With him on the brief was *Colonel Burton F. Ellis.*

*Major Stanley H. Rubinowitz* argued the cause for Appellee, United States. With him on the brief was *Lieutenant Colonel Thomas J. Newton.*

## Opinion of the Court

PAUL W. BROSMAN, Judge:

The case before us here involves principally a problem in devolution of command. Tried by a general court-martial sitting in Korea under a specification alleging desertion, in violation of Article 85, Uniform Code of Military Justice, 50 USC § 679, the accused, Williams, was found guilty as charged. He was sentenced to be dishonorably discharged from the service, to forfeit all pay and allowances, and to be confined at hard labor for ten years. Both the findings and the sentence were later approved by the convening authority and affirmed by an Army board of review. The case now comes to us by way of a petition for review from the accused, who contends that irregularity in the referral of the charge for trial deprived him of military due process.

II

Since extract copies of morning report entries served to establish the accused's guilt fully, no mention need be made of the facts surrounding the com-

244

mission of this military crime. However, it is necessary to set out in some detail certain pretrial procedures involving the convening authority and his subordinate officers.

On September 7, 1954, the staff judge advocate of IX Corps submitted his pretrial advice to the commanding general, in which trial of the accused by general court-martial was recommended. The following notation—also bearing date of September 7, 1954—appears on the same document immediately following the signature of the staff judge advocate:

"Approved.
/s/ Charles D. W. Canham
 CHARLES D. W. CANHAM
 Major General, USA
 Deputy Corps Commander."

Affidavits filed by appellate defense counsel indicate that, on the day in question, Major General S. T. Williams was regularly assigned as commanding general of IX Corps, but that he was then on temporary duty elsewhere and, in fact, physically present at Seoul, Korea, where he served as deputy commander of the Eighth Army. During General Williams' absence, Major General Charles D. W. Canham, in his capacity as deputy corps commander, approved the staff judge advocate's recommendation with respect to this appellant. Subsequently, the charge against him was referred for trial—over the command line by General Williams, not General Canham—to a general court-martial convened by the former officer. The defense now asserts that General Canham, the deputy commander, unlawfully usurped the powers and functions of the convening authority, and thereby deprived the accused of the right, granted him by Article 34, to be tried only under a charge deemed personally by the convening authority to warrant general court-martial consideration.

### III

In the first place it is to be observed that the affidavits—which we are quite willing to consider in dealing with the problem before us—indicate that from time to time General Williams returned to the IX Corps area. Certainly it is conceivable—and the contrary is not shown by the affidavits—that on such an occasion, and prior to the time of trial, he did in fact examine the advice prepared by his staff judge advocate and approved by his deputy. Cf. United States v. Allen, 5 USCMA 626, 18 CMR 250. Thus, on this assumption, the accused would have enjoyed that exercise of the personal discretion of the regularly assigned corps commander claimed for him by appellate defense counsel. It would seem, too, that the existence of this possibility is supported, in some degree at least, by the fact that the charges in this case were referred for trial over General Williams' command line, and were heard by a court-martial appointed by him.

However, another approach—which the majority prefers to follow—has to do with the status of General Canham while his superior was absent from the command, and the question of whether at such times the former succeeded to the position of General Williams as convening authority. The authority to convene general courts-martial is conferred by Article 22 of the Uniform Code, 50 USC § 586, which provides in pertinent part:

"(a) General courts-martial may be convened by—

. . . . .

"(3) the commanding officer of . . . an Army Corps . . ."

An integral segment of the power to convene is the requirement that, before a commander may refer a charge to a general court-martial for trial, he must determine, following advice from his staff judge advocate, that the charge (1) alleges an offense under military law and (2) is warranted by available evidence. See Article 34(a), 50 USC § 605; United States v. Schuller, 5 USCMA 101, 17 CMR 101. An accused person is thus assured that the convening authority himself will examine both the charge and the evidence against him, and will decide whether to refer the case for trial or not to do so, and, in the former instance, will determine the grade of court-martial—summary, special or general—by which it shall be heard. However, this ▆▆▆▆ ▪ authority set in the hands of the commander is not personal in nature, but constitutes a

**245**

part of the functions of the office he occupies. The current Manual for Courts-Martial, paragraph 5a(5), provides that:

"As Article 22 expressly designates those who have authority to convene general courts-martial, it follows that no one else has this authority and that anyone having this authority cannot delegate or transfer it to another. The authority of a commanding officer to convene general courts-martial is independent of his rank and is retained by him as long as he continues to be such a commander. The rules as to the devolution of command in case of the death, disability, or *temporary absence* of a commander are stated in departmental regulations." [Emphasis supplied.]

It is at once obvious that the Manual contemplates that changes in command will inevitably occur in a military hierarchy, and recognizes that the responsibilities and powers of a particular position may devolve upon different persons at different times. Moreover, Department of the Army Regulation 600–20 provides in part as follows:

"5. *Death, disability, or absence of commander.—a. General.* In the event of the death, disability, or *temporary absence* of the commander of any element of the Army, the next senior present on duty and not ineligible . . . wherever he may be stationed, will *assume command* until relieved by proper authority." [Emphasis supplied.]

On the death of a commander, the officer assuming command must necessarily become vested with *all* of the prerogatives and duties of that office—for the deceased superior will thereafter be unable to act or to delegate authority. And—since temporary absence is viewed in the same manner—provision is thus made for an exercise of the powers of the commander by his deputy when the former is called from the unit area by other duties. Indeed the word "assume" connotes "taking upon oneself, such as, to assume new duties." Webster's New International Dictionary, 2d ed, page 168.

**246**

We observe further that the Manual provides that the power of the convening authority to review records of trial initially may be exercised by an officer temporarily in command. In fact—as used in Chapter XVII—the term "convening authority" clearly includes an officer commanding for the time being. Manual for Courts-Martial, supra, paragraph 84a. More important, when an assigned commander is not present for duty with his command because of illness, absence on leave, or other good cause, the officer who temporarily succeeds to command *is* the officer commanding for the time being, and *inter alia,* is empowered to take initial action as convening authority on a record of trial. Manual, supra, paragraph 84b. On duly assuming command "for the time being," such an officer succeeds to *all* of the rights of review and action which would have been possessed by the convening authority had his exercise of command not been interrupted. See Winthrop's Military Law and Precedents, 2d ed, 1920 Reprint, page 450.

On the basis of these authorities, it should be apparent that the problem of General Canham's status is not one having to do with any sort of attempted delegation of authority, but rather reduces to a plain question of *devolution of command.* In short, did General Canham occupy the office of commanding general, IX Corps, at the time in question? If he did so, then the power of a convening authority to consider the evidence and weigh the charge against the accused was his own to exercise. If, on the other hand, he was no more than a subordinate, whose every action was subject to ratification or disapproval by the absent General Williams, then the defense argument doubtless possesses far more merit.

IV

The several affidavits attached to the defense brief disclose that the regularly assigned convening authority, General Williams, in addition to his duties as IX Corps commander, served as deputy commanding general of the Eighth Army. During the month of September 1954, he was required to be

present at Army Headquarters in Seoul —some sixty miles distant from the IX Corps area—and to travel frequently through the Eighth Army command. Only infrequently was he in the area of his organization. Under the provisions of AR 600–20, therefore, the next eligible senior officer present was required to assume command in his absence.

General Canham's title as deputy commander would perhaps, of itself, suggest that he was the senior officer present during General Williams' critical absence from the IX Corps. More important, however, is the circumstance that General Canham was engaged here in the performance of a military justice function normally exercised by a convening authority. Thus, presuming the existence of any shred of regularity in the operations of the corps in question, the conclusion would follow that the performance of these functions was attributable to the circumstance that under AR 600–20 Canham was in law the corps commander at the time—which is to say that he was the senior officer present. Of course, the defense has offered nothing which serves to contravene in any measure this presumption of regularity in the official conduct before us.

In considering this case, however, we have gone beyond any matter of presumption and notice judicially that during the period under scrutiny there were, in point of fact, only two officers of the grade of major general assigned to IX Corps—in addition, of course, to General Williams. These were Major General Charles C. W. Canham, who served as commanding general of the 3d Division, and Major General Robert L. Howze, who commanded the 2d.[1] Of the two officers, General Canham is manifestly the senior, for his date of rank—recorded in official Army orders—is April 6, 1944. See paragraph 4, Department of the Army Special Orders 88, dated May 1, 1952. General Howze, on the other hand, holds the grade of major general as of May 1, 1950. See paragraph 3, Department of the Army Special Orders No. 163, dated August 18, 1954. We are therefore certain that General Canham was in every respect the "next senior [officer] present on duty." Since he was not ineligible within the meaning of other paragraphs of AR 600–20, we must hold that, during General Williams' absence, General Canham possessed authority to act in every respect in the role of corps commander.

It appears that the staff judge advocate of IX Corps did not as a usual thing follow the practice of discussing pending charges personally with the convening authority, but instead relied on the exposition of the case contained in his written advice. Thus, although such a possibility cannot be excluded, there is no clear indication that General Canham exchanged views at any time with respect to the charge in the present case either with the staff judge advocate or with General Williams. The command's legal advisor, however, did inform both general officers that the powers of the convening authority could not lawfully be *delegated* to General Canham solely by virtue of his position as commanding general of the 3d Division.[2] However—and properly—no

---

[1] The official publication characterized as Department of Defense Roster, all Army General Officers, Navy Flag Officers, and Air Force General Officers Serving on Joint Staffs and Commands, discloses that, as of September 1, 1954, General Canham was serving as commanding general of the 3d Division and that General Howze commanded the 2d. A message from the commanding general, Army Forces Far East, dated June 23, 1955—supplemented by additional messages dated June 27, 1955, and July 4, 1955—further indicates that the 3d Division was attached to IX Corps from October 1, 1952, until October 22, 1954, and that the 2d Division was also attached to that Corps from April 27, 1953, through September 7, 1954. Official efficiency reports submitted by General Williams further reveal that as Corps commander, he rated only two officers of the grade of major general during the period in question. The officers so rated were General Canham and General Howze, the commanders of the 3d Corps and 2d Infantry Division, respectively.

[2] Under Article 22 of the Uniform Code, the commanding general of a division is authorized to convene a general court-martial, and General Canham

**247**

such warning was given with respect to the latter's eligibility to act as commanding general of the Corps and, so far as we are able to ascertain from the limited information before us, General Canham, in this latter capacity, passed personally on the present charge while General Williams was absent from IX Corps headquarters temporarily.

In United States v. Bunting, 4 USCMA 84, 15 CMR 84, a substantially similar situation was involved. There a Navy chief of staff convened the general court-martial which tried the accused while the former was serving as commander during the temporary absence of the regularly assigned commander of Naval Forces, Far East. Relying on applicable Navy Regulations, we concluded that the chief of staff, *qua* commander, held the power to convene the court-martial in question—and in his own right—during the regularly assigned commander's absence. Although the Regulations of the two services differ somewhat in detail, we are sure that the same result must follow in the case before us now.

Of course, whenever the regularly assigned commander returned to the Corps area, his deputy was divested of authority—but by standing ready to assume the former's duties at all times, General Canham insured the smooth functioning of the unit regardless of the necessary absences of its permanent head. We have no doubt that this constituted the principal purpose served by the Army Regulations on which we principally base our action here. Accordingly, we conclude that when General Williams was absent from the IX Corps location, the deputy commander, General Canham—as "the next senior present on duty"—temporarily assumed the duties and powers of commanding general of the organization, and was entitled, as the holder of that office *pro tem* to consider and weigh the evidence and evaluate the charge in the instant case. Indeed, during such an absence the latter officer could lawfully have referred the present charge for trial, and himself have appointed the court-martial which tried the accused before us.

## V

The decision of the board of review is affirmed.

Judge LATIMER concurs.

QUINN, Chief Judge (concurring in the result):

If, as pointed out in the principal opinion, General Canham directly succeeded to the command in General Williams' temporary absence, he had the legal authority to refer the charges to trial. Article 34, Uniform Code of Military Justice, 50 USC § 605; AR 600–20, paragraph 5(a); United States v. Bunting, 4 USCMA 84, 15 CMR 84.

General Canham's right to succeed depended upon whether he was "the next senior present on duty." AR 600–20, paragraph 5(a). No evidence of General Canham's rank in relation to the other officers of the command appears in the record, or in the affidavits submitted by the accused. Unlike the majority, I do not believe that this Court can take judicial notice of the fact that two officers of a specified grade are present in a designated area and that one is senior to the other. See my dissent in United States v. Uchihara, 1 USCMA 123, 2 CMR 29.

Nor does the fact that General Canham was Deputy Corps Commander have any significance. The position of Deputy Corps Commander may not be uncommon, but it is unusual. It is not listed in the Table of Organizations and Equipment for a Corps generally, and it is not provided for specifically in the general order of Headquarters, Eighth Army, which organized the IX Corps. T/O & E 52–1A, September 11, 1953; General Order 100, Headquarters, Eighth Army, March 6, 1954. Moreover, I have serious doubts as to whether we can take judicial notice of a Department of the Army special order as distinguished from a general order. Manual

was a division commander. However, no effort has been made by the Government to utilize this circumstance in

sustaining General Canham's action in the present case, and we see no point in considering the problem here.

248

for Courts-Martial, United States, 1951, paragraph 147, page 274; United States v. Taylor, 2 USCMA 389, 9 CMR 19. Thus, proof of General Canham's status as "next senior present" must be established by other means.

It appears from the affidavits, especially that of Colonel Abrams, the Corps' Chief of Staff, that General Canham acted as the Commander in General Williams' absence. It must be presumed that in so doing, General Canham acted lawfully. Consequently, in relation to the facts in this case, it must be presumed that General Canham assumed the office of commander, not merely because of his paper title of Deputy Corps Commander, but because he was "the next senior present" and was entitled to the office by virtue of the provisions of AR 600–20, paragraph 5(a). The accused has offered no evidence to rebut the presumption. As a matter of fact, it may be inferred from his brief and supporting papers that he concedes General Canham's status as the Corps officer "next senior" to General Williams.

In summary, therefore, no view of the case supports the accused's contention that Article 34 was violated. If we look only to the record there is patently no violation. If we look to the supplemental affidavits, it is equally clear that the officer actually and legally in command properly referred the charges to trial. United States v. Bunting, supra. Accordingly, I join in affirming the decision of the board of review.