UNITED STATES, Appellee

v

RICHARD S. GREENWALT, Sergeant
First Class, U. S. Army, Appellant

6 USCMA 569, 20 CMR 285

No. 7163

Decided December 21, 1955

*First Lieutenant Stephen D. Potts* argued the cause for Appellant, Accused. With him on the brief were *Colonel Burton F. Ellis,* Lieutenant *Colonel Stanley F. Flynn,* and *Captain Albert C. Malone, Jr.*

*Captain Vernon M. Culpepper* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel Thomas J. Newton, First Lieutenant A. Kenneth Pye,* and *First Lieutenant Russell L. Brenneman, Jr.*

## Opinion of the Court

GEORGE W. LATIMER, Judge:

In this instance we are faced with a procedural problem which is unrelated to the merits of the case against the accused. Sergeant Greenwalt, the accused, was convicted by a general court-martial of desertion, in violation of Article 85, Uniform Code of Military Justice, 50 USC § 679, and sentenced to dishonorable discharge, total forfeitures, and confinement for one year. The convening authority suspended the punitive discharge until his release from confinement or completion of appellate review, whichever occurs later, and intermediate reviewing authorities have affirmed. We granted review to determine whether the staff judge advocate misled the convening authority to the prejudice of the accused. While the case was pending before us, a petition for new trial was filed. Because of our decision on the appeal, the petition for new trial is denied without discussion, for the grounds advanced for relief may be considered on rehearing. Only the facts necessary to our disposition of the appeal will be related.

Following the apprehension of the accused after an absence without leave of some six months' duration, a charge of desertion was lodged against him, and, as is the usual course of events, an investigation of the charge was made. The investigating officer—whose efforts are not attacked as having been other than fair or exhaustive—recognized a number of mitigating and extenuating circumstances. Accordingly, he made the following recommendation for consideration by the convening authority:

"SFC. GREENWALT was under severe mental strain during the four months period prior to his being absent without leave. The cause was his wife's insistence for a divorce

upon his return from the Far East Command and the serious illness and death of his father in December 1953. He has two children and the thought of losing them preyed on his mind. SFC. GREENWALT prior to commission of the subject offense has had a clean record during his ten years of service. In the opinion of the investigating officer, SFC. Greenwalt, after serving whatever sentence is imposed by courts-martial, can be rehabilitated so as to be an asset to the service. In view of the above, trial by Special Courts-Martial is recommended."

Thereafter, the Report of Investigation and allied papers were forwarded through channels and referred to the convening authority's staff judge advocate for consideration and advice. In his advice to his commanding officer, the staff judge advocate, we assume inadvertently, misstated the position taken by the investigating officer, for he said:

"The investigating officer has recommended trial by general court-martial. The total maximum sentence for the offense as charged would be dishonorable discharge, forfeiture of all pay and allowances, and confinement at hard labor for three (3) years. There appears to be no mitigating circumstances in favor of the accused. I recommend trial by general court-martial."

As might be expected, the convening authority referred the charge to a general court-martial for trial. It is upon the foregoing fact-complex, that defense counsel erected their argument in support of the petition for review. However, they originally based their presentation upon the proposition that the staff judge advocate had failed to

**571**

give more than superficial attention to this case, and had misled the convening authority to the detriment of the accused. Since that time, however, there has been filed with us a communication from the convening authority wherein he asserts that prior to the time when this case arose, he delegated to his staff judge advocate the authority to refer general court-martial cases to trial. Hence, according to his own admission, that commander never learned of the contents of the written advice given in this case. Using this new foundation, defense counsel now urge that this attempted delegation of power was illegal.

We begin our treatment of the issue here with the premise accepted by all of us in United States v ■ Schuller, 5 USCMA 101, 17 CMR 101, to the effect that in every case a staff judge advocate must fully comply with Article 34 of the Code, 50 USC § 605. The Article requires that he consider and give advice upon every charge before it is referred to a general court-martial for trial. This is an important pretrial protection accorded to an accused, and Congress had in mind something more than adherence to an empty ritual. It placed a duty on the staff judge advocate to make an independent and informed appraisal of the evidence as a predicate for his recommendation. His is the role of an adviser, and unless he reviews the record thoroughly and accurately, he cannot soundly advise the man who has to make the ultimate decision. Therefore, to the extent that the advice rendered by him is incomplete, ill-considered, or misleading as to any material matter, he has failed to comply with the statutory obligation which rests upon him.

By law, the final responsibility for determining whether charges are to be referred for trial, and the ■ kind of court-martial before which they are to be heard, rests with the convening authority. While he is required to consult with his legal adviser before such reference, he is not required to follow the recommendation which he receives. When as here, there is an actual conflict between the investigating officer's recommendation and the one submitted by his counselor, the convening authority may accept either. It, ■ therefore, becomes manifest that where the counselor's advice submitted to him misstates the position taken by the investigating officer in two material particulars, the convening authority's freedom to choose among forums has been influenced improperly. To say that he has the power or right to disregard the recommendation is to ignore the practicalities of the situation. If a cursory probe established that the two officers agreed on the appropriate type of court, there might be no occasion for him to consider the factors that influenced each. If both stated there were no extenuating or mitigating circumstances as to this offense, on what basis would he found his rejection of his lawyer's advice? If the parties who had looked most deeply into the subject matter of the allegations were unanimous in concluding that trial by general court-martial was warranted, why should the convening authority disagree? The ultimate decision is his, and so it is possible both that the convening authority might have discovered his adviser's error, or that he might have seriously considered rejecting the advice given to him. But any commander, unless he has been alerted to the contrary, leans heavily upon his staff members for sound factual data. That is as it should be, but it re-enforces our conclusion that the staff judge advocate's errors in his advice were likely to mislead the convening authority in the exercise of his power of referral.

It requires little effort to demonstrate that the accused was prejudiced by the error found. True enough, desertion is rightly viewed as a serious matter by the military community. In time of peace, where the offender is returned to military control only as the result of apprehension, he is subject to a penalty of as much as three years' confinement, which is certainly a considerable period. Accordingly, such an allegation normally deserves trial by general court-martial. But this ac-

cused had completed almost twelve years of unclouded service prior to his absence, was beset with pressing family difficulties which no doubt preyed on his mind, and was deemed to have considerable potential for rehabilitation. Indeed, although the staff judge advocate could find no mitigating circumstances before trial, he found enough thereafter to recommend suspension of the punitive discharge. Having in mind all of these considerations, it is not beyond the realm of reason to conclude that the convening authority might have accepted the investigating officer's recommendation, had he known of it, and ordered trial by special court-martial. When we reach that conclusion, prejudice becomes apparent, for such a tribunal could have awarded no more than partial forfeitures and confinement for six months. The sentence here exceeds those limits, and reversal would be in order if this were the true factual situation.

In an apparent effort to escape the conclusion that the advice did not mislead him, the convening authority furnished a let- ter to appellate defense counsel which has found its way into the record. For the pur poses of argument, we will suppose that the letter is properly before us. We can make that assumption without prejudicing the Government, and in that connection it should be noted that Government counsel does not urge that we not consider the document. The letter would establish that the convening authority neither saw nor considered the erroneous advice—and therefore could not have been misled—for he had delegated to the staff judge advocate the authority to refer cases for trial. That action would not materially aid the Government's position in this case, for we have earlier held that the power of referral cannot be delegated.

It should first be mentioned that the convening authority has attempted to go behind his own command line and dissociate himself from the endorsement issued in his name, for the record of trial asserts that the charges were referred for trial by his command. This is a practice—impeachment by a Government official of his own prior act —which we have never permitted, and we are not inclined to do so here. United States v Marsh, 3 USCMA 48, 11 CMR 48; United States v Haimson, 5 USCMA 208, 17 CMR 208; United States v Blau, 5 USCMA 232, 17 CMR 232. However, we will pass this question, for the letter exposes another defect which is fatal to the Government's case.

In United States v Williams, 6 USCMA 243, 19 CMR 369, we gave extended consideration to the question of whether the power to refer cases to trial could be delegated. We concluded that, by statute, this authority is a part of the functions of the office occupied by the commander who is authorized to convene general courts-martial, and cannot be delegated. Thus every accused is assured:

". . . that the convening authority himself will examine both the charge and the evidence against him, and will decide whether to refer the case for trial or not to do so, and, in the . . . [former] instance, will determine the grade of court-martial—summary, special or general —by which it shall be heard."

Earlier, we had reached the very same conclusion, for in United States v Bunting, 4 USCMA 84, 15 CMR 84, we said:

". . . the reference of the charges for trial requires the exercise of a judicial judgment, and consequently the power to refer would be clearly nondelegable."

Accordingly, any such delegation of power as the convening authority asserts in his letter he attempted would be patently illegal, and result in the conclusion that these charges were never properly referred for trial.

In seeking to escape the dilemma posed by this set of circumstances, Government counsel first of all argue that the reference of charges for trial is only a procedural matter and not an indispensable requisite for court-martial jurisdiction. They next contend that a convening authority's approbatory ac-

**573**

tion after conviction operates to ratify the proceedings of a court-martial, even though the charges were never referred to it, and rely for their authority upon a long line of prior decisions by boards of review. See, as illustrative opinions, United States v Casey, 3 BR 159; United States v Wilson [ACM 1974] 2 CMR (AF) 262; United States v Petro [CM 369622] 16 CMR 302; 3 Bull JAG, February 1944, § 365(1), page 54. If applied to this case, it would follow—according to Government counsel—that even though the convening authority had never referred the charges for trial, his subsequent action affirming the court-martial's findings and sentence would purge the proceedings of the prior error.

We are convinced that the service decisions, cited supra, will not aid the Government in this case, regardless of which theory mentioned earlier is relied on for reversal. In our view this cause is not within the principle set forth in those authorities, for in every one of the cited holdings, the convening authority had referred the case for trial by a general court-martial, but a court other than the one specified by him tried the accused. Thus, in each prior instance, the convening authority had made a selection of the class of court he desired to have hear the case. In making that selection he had consciously chosen a court with certain powers, and had fixed certain substantial rights of the accused. There he had determined the offense was of such severity as to warrant the treatment given a felony in civilian practice. Such is not the situation here.

However, let us assume that military precedent supports the view that a convening authority could legally ratify a proceeding where he had never considered the appropriate forum for trial, or had been misled in its selection. We have no doubt that such a theory could not be sustained in the present setting. Under such a theory, each case would have to be treated on an ad hoc basis to determine whether the accused had been prejudiced by the denial of his right to personal consideration by the convening authority prior to trial. We

might assume that a case could occur where the offense was particularly heinous, where the evidence of wrongdoing was clear and abundant, where not a single mitigating or extenuating circumstance could be shown, and where no reasonable person could doubt but what a trial by general court-martial was not only warranted but impelled. We need not decide herein whether ratification by the convening authority after trial could cure the error admittedly present in that situation. It is enough to say that in this instance we are not presented with a case which causes us to ponder over ratification as a cure for error.

We have earlier enumerated the factors which rendered reasonable the decision of the investigating officer to recommend trial by special court-martial. These included long and honorable prior service by the accused, sufficient ability on his part to rise to the rank of a senior noncommissioned officer, his pressing personal and family problems, the likelihood of his rehabilitation, and his potential value to the service. Had these matters been brought to the attention of the convening authority, he might have agreed with the recommendation of trial by special court-martial. However, once a general court-martial has been held, it is only remotely possible that a convening authority would disapprove the entire proceedings and cause the delay and expense attendant upon a second trial by an inferior court-martial. On the contrary, it becomes more likely that he would approve the entire proceedings, including the sentence imposed, in an effort to support the action taken by his staff officer, so long as that action was not patently outrageous. Even if the error was called to his attention he would not be apt to reverse the findings and sentence, as the concept that "loyalty down breeds loyalty up" is deeply ingrained in the military, and is, in almost all instances, a salutary one. However, here it could only operate to prejudice the accused. Accordingly, we hold that the convening authority did not cure the error found here by his subsequent affirmance of the findings and sentence, for his dis-

cretion, whether exercised or not, was effectively circumscribed before he was called upon to act.

The decision of the board of review is reversed and the record is returned to The Judge Advocate General of the Army. A rehearing may be ordered.

Judge BROSMAN concurs.

QUINN, Chief Judge (concurring):

Although I concur generally with the principal opinion, I disagree with the unqualified statement that this Court has "never permitted" a party "to go behind . . . [the] command line." Undeniably, we have presumed knowledge on the part of the commander of the action taken in his name (United States v Haimson, 5 USCMA 208, 17 CMR 208), but that presumption does not preclude a direct attack upon the command line intended to show, as here, that the convening authority improperly delegated his power to convene a court-martial. See my concurring opinion in United States v Williams, 6 USCMA 243, 19 CMR 369.