**UNITED STATES**

v.

**Charles L. DUVALL, 447 60 2110, Personnelman Seaman (E–3) U. S. Naval Reserve.**

**NCM 77 1641.**

U. S. Navy Court of Military Review.

Sentence Adjudged 5 April 1977.

Decided 19 June 1979.

LT Lawrence W. Muschamp, JAGC, USN, Appellate Defense Counsel.

LT Christine M. Yuhas, JAGC, USN, Appellate Government Counsel.

Before DUNBAR, Senior Judge, and BAUM and MICHEL, JJ.

BAUM, Judge:

On 30 January 1978 this Court returned the record for an evidentiary hearing in accordance with *United States v. DuBay,* 17 U.S.C.M.A. 147, 37 C.M.R. 411 (1967), on the issue of whether the court-martial was convened properly. That hearing has been held and, although woefully short on competent evidence, the testimony and documents presented at the hearing and at trial do establish certain facts. Appellant, a naval reservist on active duty, was assigned for duty to Carrier Airborne Early Warning Squadron 78 (VAW–78), a reserve force squadron located at Naval Air Station, Norfolk, Virginia, and was referred to a special court-martial convened by the commanding officer of that squadron. Both the referral and the convening of the court were accomplished while the commanding officer, a civilian ready reservist, was at home in Roanoke, Virginia, some 250 miles away from the squadron in Norfolk. The commanding officer, during the preceding year, spent approximately 105 days with the squadron in Norfolk and the remainder of the year at home working at his civilian job. Whenever the commanding officer returned home, the operations officer, who was on active duty full time, became the officer in charge of the squadron pursuant to orders from higher authority. While the commanding officer kept in touch with the squadron by telephone from his home, the officer in charge was responsible for maintaining order and coordinating the training, administrative and maintenance functions of the squadron in the commanding officer's absence.

The question presented by these facts is whether the designated commanding officer of the squadron, who remained the commanding officer as an inactive duty reservist, was empowered to convene a court-martial and refer charges to that court by telephone from his home while he was in an inactive duty status and ostensibly a civilian.

The Government asserts that the commanding officer was not a civilian but rather on inactive duty for training at the time he convened the court and referred the charges because in taking those actions "he was engaged in the administration of his duties as the commanding officer" and was thus entitled to "drill credit", even though at home. Moreover, the Government argues that, as commanding officer, he retained continuing responsibilities that permitted him to convene a court and refer charges even while on inactive duty. On the other hand, appellant argues that, "[t]he facile assertion that . . . [the commanding officer] zealously guarded his common prerogatives from his home in Roanoke four hours away and ran the squadron by telephone, as his civilian job permitted, is not only reprehensible to any sense of military preparedness, it is simply not the law." Appellant cites *United States v. Bunting,* 4 U.S.C.M.A. 84, 15 C.M.R. 84 (1954) for the proposition that command devolves upon another when a commanding officer is not in a position to exercise full and effective control of his organization. In *Bunting,* the Commander Naval Forces Far East, prior to assuming other duties as Senior United Nations Delegate in Korea, designated his chief of staff to act as Commander in his absence. The chief of staff, as acting Commander, convened a court-martial and referred charges to it. The accused challenged the chief of staff's authority to act in this capacity. In rejecting this challenge, the Court of Military Appeals stated:

The efficient operation of a military unit, especially in combat, requires that the commanding officer be in full and effective control of his organization. If his circumstances are such that he is unable

to give his undivided attention and considered judgment to the functions of the command, there is certainly some basis for a succession of command.

In the instant case the commanding officer, although away from his command on inactive duty for the greater part of the year, did not designate an officer to act as commanding officer in his absence, as in *Bunting*. Higher authority, however, provided for this circumstance by specifically ordering that the squadron operations officer, who was not an inactive reservist but rather an active duty officer, would become officer in charge of the squadron whenever the commanding officer was on inactive duty. During such periods, in our view, the commanding officer was not legally empowered to exercise court-martial functions as a commanding officer, since administrative command functions had devolved to the officer in charge.

The fact that higher authority had not chosen to substitute another commanding officer instead of an officer in charge or to grant the officer in charge authority to convene courts does not affect our conclusion concerning devolution of command. In the absence of the commanding officer, the operations officer became the officer in charge of the squadron, with all the command authority that goes with that position, and, as such, he could have been empowered by the Secretary of the Navy to convene special courts-martial pursuant to Article 23(a)(7), Uniform Code of Military Justice, 10 U.S.C. § 823(a)(7). The failure to so designate that officer as a special court-martial convening authority does not mean that the power remained with the commanding officer, who was absent from his command and had been succeeded by the officer in charge. The officer in charge was not, in effect, a command duty officer, as opined by the military judge during his questioning of a witness. He was, instead, the officer in command of the squadron whenever the commanding officer returned to his civilian status.

■ Furthermore, we believe that, except for the President and the service secre-

taries, as provided for in Article 22, UCMJ, 10 U.S.C. § 822, only military officers who are subject to the Uniform Code of Military Justice are empowered to exercise disciplinary functions through the convening of courts-martial and referral of charges to trial. Members of a reserve component are subject to the UCMJ only while they are on inactive duty training authorized by written orders which are voluntarily accepted by them and which specify that they are subject to the Uniform Code of Military Justice. UCMJ, Article 2(3), 10 U.S.C. § 802(3). Despite some testimony to the effect that the commanding officer of VAW–78 could order himself to active duty whenever he wanted, that when he conducted squadron business by phone from his home he was automatically on inactive duty training and that after the fact orders were written placing him on active duty at the specific time he convened the court and referred charges for trial, we believe that he was neither on active duty nor on inactive duty training at that time. Accordingly, he was not subject to the UCMJ and, for this reason, also, could not convene a court or refer charges. The court-martial, therefore, was not legally convened and the purported referral of charges was a legal nullity.

■ Since, at the time, neither the commanding officer nor the officer in charge had authority to convene a court-martial and refer charges for trial, proper referral, without ordering the commanding officer to active duty or inactive duty training with his squadron in Norfolk, could have been accomplished by the forwarding of the charges to an officer with court-martial authority, as contemplated in paragraph 32, *Manual for Courts-Martial, United States, 1969* (Revised edition).

■ As a separate matter, the manner in which the evidentiary hearing was conducted requires comment. Despite the military judge's statement at the outset of the proceeding, that he would base his decision solely on matters presented at that forum, the record at the *DuBay* hearing as a whole, including a lengthy exposition by the mili-

tary judge of his own knowledge with respect to reserve matters and the manner in which he personally examined the two Government witnesses, raises serious questions as to whether his findings were based solely on evidence presented at the hearing. Furthermore, his comments at the end of the hearing indicate that, due to his background and experience with the reserves, the military judge believed himself to be qualified as an expert witness on the subject of the aviation reserve organization, and, accordingly, should have considered recusing himself from the proceeding. *See United States v. Conley,* 4 M.J. 327, 330 (C.M.A.1978).

■ In addition to our concern about the judge's handling of the evidentiary hearing, we are dismayed by the trial defense counsel's failure to make any effort to develop evidence in support of the arguments advanced before this Court by the accused's appellate counsel. The trial defense counsel made no attempt to cross-examine the commanding officer of VAW–78, offered no evidence, made no argument prior to findings, and raised no objections to any of the many improper questions posed to the witnesses by the judge or to the judge's reliance on matters not presented at the hearing, as revealed by his comments after findings. From counsel's conduct at the hearing, it appears that he either did not concur with the views of appellate counsel or did not understand his responsibilities in representing these views. If he did not agree with the position taken by appellate defense counsel, then it was incumbent upon the trial defense counsel to communicate with appellate counsel about the matter and either resolve the differences or have the accused elect between the two positions espoused. If appellant chose to continue with the arguments advanced by appellate counsel, then it was essential that he be represented at the *DuBay* hearing by a counsel who would actively develop matters favorable to that position. Trial defense counsel failed to fulfill these requirements. In oral argument before this Court, it was revealed that there was no communication at all between trial defense counsel and appellate defense counsel before the *DuBay* hearing was conducted, and, based on the record before us, it is clear that during the hearing trial defense counsel failed to actively pursue the objectives that had been raised at the appellate level. In our view, one of the first things a trial defense counsel should do when notified that a record has been returned by an appellate court for an evidentiary hearing is to communicate with the appellate defense counsel. Proceeding with the hearing without such communication will invariably raise the question of adequacy of representation. In this regard, it should also be noted that appellate counsel is not without responsibilities in this matter. In any event, whatever the reason, we do not believe that appellant was adequately represented at the *DuBay* hearing.

The appellant has served all confinement and the period of suspension of the bad-conduct discharge has long since run. We see no useful purpose to be served by further proceedings in this case. Accordingly, for the reasons as set forth in this opinion, the findings of guilty and sentence are set aside and the charges are dismissed.

Judge MICHEL concurs.

DUNBAR, Senior Judge (concurring):

I concur in the majority decision because it is difficult to accept the concept that a naval reservist who is a full-time civilian employee of an insurance company, bank, brokerage firm, etc., can refer court-martial charges to trial, by telephone, from his civilian place of employment, without benefit of orders placing him in an active duty status. Nevertheless, pages 22 and 23 of the record of trial reveal genuine confusion and uncertainty as to the actual military status and authority of persons such as Commander Summers, who referred the charges in the instant case. In my opinion, this record should be referred to appropriate naval authorities so that effective action may be taken to either clearly establish the authority of reserve commanding officers in similar situations to refer charges to trial, or, to disavow such authority and at the same time provide procedural guidance.