UNITED STATES, Appellee,

v.

Marc A. KALSCHEUER, Airman First
Class, U. S. Air Force, Appellant.

No. 36,147.
ACM 22327.

U. S. Court of Military Appeals.

Aug. 17, 1981.

For Appellant: *Major Wade B. Morrison* (argued); *Colonel B. Ellis Phillips* (on brief).

For Appellee: *Captain Michael J. Hoover* (argued); *Colonel Julius C. Ullerich, Jr.* (on brief); *Colonel James P. Porter, Major Gilbert J. Regan, Captain Joseph S. Spitzer.*

Amicus Curiae on behalf of Appellee: *Colonel R. R. Boller, U.S. Army* (on brief).

*Opinion of the Court*

EVERETT, Chief Judge:

On November 7, 1977, appellant was tried by general court-martial on charges concerning his possession of methamphetamine and marihuana at Ramstein Air Base, Germany.[1] After being found guilty of having possessed 70 grams of methamphetamines and 60 grams of marihuana, he was sentenced to a bad-conduct discharge, partial forfeitures and confinement at hard labor for 2 months, and reduction to the grade of Airman Basic. The convening authority approved the sentence and the United States Air Force Court of Military Review affirmed.

This Court granted the appellant's petition for review on several issues. 5 M.J. 363 (1978). However, due to intervening decisions in other cases, the only question which has not already been resolved adversely to appellant is whether a proper person authorized the search which resulted in the seizure of prosecution exhibits 4 through 13 (Issue IB).

I

The search of appellant's off-base quarters in Kottweiler, Germany, occurred on August 12, 1977 and was authorized by Lieutenant Colonel Boe, the Deputy Base Commander of Ramstein Air Base. In a letter dated August 2, 1976, the former Base Commander, Colonel Welch, delegated to Lt. Col. Boe his authority to permit searches. On August 11, 1977, a new Base Commander, Colonel Plowden, replaced Welch, but had not expressly delegated such power to Boe. The next afternoon, when the search now in question was authorized, Plowden was accompanying the Wing Commander on a tour of base facilities at two installations a few kilometers from Ramstein. Although Colonel Plowden had left his portable radio with Lt. Col. Boe, he was with the Wing Commander, who usually did have a portable radio. However, no attempt was made to contact Colonel Plowden.

II

Pursuant to well-established military custom, commanding officers have long been empowered to permit the search of persons and property under their command. When American troops have been stationed in foreign countries, the authority to search a service member has encompassed the authority to search his off-post quarters—presumably because under such circumstances American civil magistrates are not readily available to issue search warrants.[2] *See* para. 152, Manual for Courts-Martial, United States, 1969 (Revised edition); para. 152, Manual for Courts-Martial, United States, 1951. In recent years, one Service has also authorized the use of military judges and military magistrates to find probable cause and, pursuant thereto, to issue search warrants and warrants for apprehension. *See* Army Regulation 27–10 (C. 9, July 19, 1972). Indeed, the use of magistrates was contemplated in the 1969 Manual. *See* Analysis of Contents, Manual for Courts-Martial, United States, 1969, Revised edition, para. 152; *United States v. Stuckey,*

---

1. Charge I alleged possession of methamphetamines contrary to an Air Force Regulation and Charge II alleged possession of marihuana, in violation of Articles 92 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 892 and 934, respectively.

2. Of course, treaty obligations and rules of international law may affect a commander's authority to order off-post searches in foreign countries.

10 M.J. 347, 365 (C.M.A.1981).[3] However, in the case at hand, the Government relies on still another basis for authorizing searches and seizures—namely, the provision in paragraph 152 of the 1969 Manual which allows a commander to delegate to others his power to authorize a search.[4] Under this provision of the Manual, buttressed by the powers expressly conferred on the President by Articles 36 and 140 of the Code, 10 U.S.C. §§ 836 and 940, respectively, the Government claims that the delegation in the present case was entirely permissible. Furthermore, referring to the Fourth Amendment's fundamental norm of reasonableness, the Government urges that it is quite reasonable to allow busy commanders to delegate to some neutral and detached person the authority to order searches. Indeed, it is argued that such delegation best fulfills the purpose of *United States v. Ezell*, 6 M.J. 307 (C.M.A.1979), for it removes from the process of determining probable cause a commander whose neutrality and detachment may at times be subject to question.

This argument encounters several obstacles. First, as in the case at hand, a question may arise as to the existence or scope of the delegation.[5] The next objection is more fundamental. If delegation is to be tolerated, there should be standards for that delegation. *Cf. Kent v. Dulles*, 357 U.S. 116, 129, 78 S.Ct. 1113, 1119, 2 L.Ed.2d 1204 (1958); *A.L.A. Schechter Poultry Corp. v. United States*, 295 U.S. 495, 55 S.Ct. 837, 79 L.Ed. 1570 (1935); *Panama Refining Co. v. Ryan*, 293 U.S. 388, 55 S.Ct. 241, 79 L.Ed. 446 (1935). However, despite the importance of guidelines for the exercise of powers which affect important personal rights—such as the right to be free from unreasonable searches—the Manual for Courts-Martial has provided only rudimentary standards for the delegation by a commander of his authority to permit searches.

Thus, the 1951 Manual allowed a "commanding officer . . . [to] delegate the general authority to order searches to persons of his command"—language which seems to countenance delegation to persons of any grade or rank and to any number of persons simultaneously, subject only to the limitation that the delegee be a person "of his command." The 1969 Manual removes even that limitation for it permits delegation "to persons of his command, or [who are] made available to him." However, in line with many precedents from this Court, the 1969 Manual notes, "Any such delegation should be made to an impartial person." Para. 152. Mil.R.Evid. 315(d)(2), in turn, allows a search authorization by "[a]n impartial person to whom the authority has been delegated by a person empowered to authorize a search . . . [a Commander] except insofar as the power to delegate is restricted by the Secretary concerned." Not only is there no limitation as to grade or rank, but it is not even required that the delegee be in the same command or be made available to the commander.

The continuing erosion of safeguards is apparent. The Manual for Courts-Martial, U.S. Air Forces, 1949, did not purport to authorize any delegation. The 1951 Manual allowed delegation only to persons within the same command. The 1969 Manual permitted delegation to persons of the same command or "made available to" the commander. The Military Rules of Evidence authorize delegation to any "impartial per-

3. According to information provided by counsel during oral argument of this case, the Air Force has no system of military magistrates; does not allow its military judges to be used in connection with search authorizations; and has not authorized the use of military magistrates or judges of other Services who may be located near the place where the search will be performed.

4. A similar provision appears in paragraph 152, Manual for Courts-Martial, United States, 1951, but not in paragraph 138, Manual for Courts-Martial, U.S. Air Forces, 1949. *See* Mil.R.Evid. 315(d)(2).

5. When he assumed command on August 11, 1977, Colonel Plowden did not renew the delegation of authority to Lieutenant Colonel Boe, and the original delegation did not purport to survive a change in command.

son."[6] Moreover, in none of the Manuals has delegation of the authority to order searches been limited to occasions when the commander was absent or otherwise unavailable to act on a request to search. Thus, by blanket delegation a commander could completely remove himself from involvement in search authorizations. This vast latitude granted a commander for delegating his authority to search seems at odds with well-established doctrine concerning delegation.

The most basic objection to the commander's delegation of his authority stems from the Fourth Amendment itself. A commander's authority to permit a search is consistent with that Amendment for the very reason that he *is* commander over the persons or property to be searched. *See United States v. Stuckey, supra; United States v. Middleton*, 10 M.J. 123 (C.M.A. 1981); *United States v. Ezell, supra*. By virtue of his command status, a commander has responsibilities that others do not possess, and so he must be granted powers commensurate with ' that responsibility. *See United States v. Stuckey, supra* (Everett, C.J.). Thus, in military life—and in military justice—many actions derive their validity from the command relationship and are performed "by order of" or "by command of" a named commander. For example, as reflected on the charge sheet, the convening of a court-martial and referral of cases to that court take place by order of a named commander, and this Court has insisted that such authority not be delegated. *United States v. Ryan*, 5 M.J. 97 (C.M.A. 1978); *United States v. Allen*, 5 U.S.C.M.A. 626, 18 C.M.R. 250 (1955); *cf. United States*

*v. Bingham*, 3 M.J. 119 (C.M.A.1977) (vacation of suspended discharge). Likewise, nonjudicial punishment under Article 15 is imposed by a commander—not by his delegee.[7]

Accordingly, there is a serious Fourth Amendment problem with the reasonableness of a search authorized by a person purporting to act under a commander's delegation—especially when almost no standards have been provided for such delegation. Moreover, the existence of this problem suggests that, absent the most persuasive evidence of legislative intent to the contrary, the Uniform Code should not be interpreted to allow such delegation.[8]

The Government replies that commanders are sometimes absent or otherwise unavailable to act on requests for permission to conduct searches and that, therefore, it is unreasonable to require that commanders make personal decisions on such requests, rather than delegating this task to others. However, we note that as to many other matters a commander is expected to make a personal decision; and presumably the widespread use of portable two-way radios by commanders is designed to facilitate making these decisions expeditiously even when they are away from their offices. Furthermore, because of the close relationship of searches to the morale and discipline of a military organization, we would assume that requests to search involve decisions which many—if not most—commanders would desire to handle personally, if at all feasible. However, the Manual provisions permit searches under delegated authority to be the common practice, rather than the well-defined exception.

**6.** Undoubtedly, the draftsmen of the Military Rules of Evidence anticipated that the Service Secretaries would impose limitations on the power of a commander to delegate his authority to order searches. Of course, Secretarial regulations may vary markedly from one Service to another; are not a part of the Manual for Courts-Martial; and may be changed readily.

**7.** The only exception is for "a commanding officer exercising general court-martial jurisdiction or an officer of general or flag rank in command" who "may delegate . . . to a princi-

pal assistant." Article 15(a), UCMJ, 10 U.S.C. § 815(a).

**8.** Typically, legislation is interpreted in a way that will avoid constitutional problems. 2A Sutherland, *Statutory Construction*, § 45.11 (4th ed. 1973). Thus, without clear evidence to the contrary, Articles 36 and 140, UCMJ, 10 U.S.C. §§ 836 and 940, respectively, should not be construed to provide congressional approval of delegation in the sensitive area of search and seizure.

Frequently, military regulations or customs provide in the command hierarchy for a vice commander or deputy commander who acts in the commander's stead when he is absent or otherwise unavailable. Thus, in the case at bar, Lt. Col. Boe as deputy base commander acted as commander when Colonel Plowden was absent. In such an event, Boe's authority as "acting commander" to order searches would be the same as Plowden's, since he had assumed command responsibilities.[9] Of course, this authority would exist apart from any formal delegation.

We also have perceived that to relieve some of the burden on commanders, the command structure has itself been refined. For example, the Air Force has "base commanders" like Colonel Plowden, who bear administrative and housekeeping responsibilities for air bases; these bases, in turn, support wings and other units, which may have their own commanders, with responsibilities distinct from those of the base commanders. Similarly, in Europe the Army has utilized "community commanders," whose responsibilities appear to be distinct from those of other Army commanders in that region.

Moreover, in some Services the burden on commanders in issuing search warrants has been relieved by the utilization of military magistrates who need not be lawyers, cf. *Shadwick v. City of Tampa*, 407 U.S. 345, 92 S.Ct. 2119, 32 L.Ed.2d 783 (1972), but whose acts are judicial in nature and, with respect to searches and seizures, are subject to the limitations imposed by the Warrant Clause of the Fourth Amendment. *Cf. United States v. Stuckey, supra*, (opinion of Everett, C.J.). While a military magistrate

must be "impartial," he is subject to additional role expectations—especially that he behave as a "judicial officer." Furthermore, the determinations of probable cause by a military magistrate are entitled to the favorable treatment accorded similar determinations by civil magistrates. *United States v. Ventresca*, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965); *United States v. Stuckey, supra.*

Sometimes the authority of a military judge or magistrate to permit a search has been justified in terms of delegation by a commander. However, military judges and magistrates usually have not relied on specific delegations from individual commanders, but instead have considered their authority to be derived from the Code or from Service regulations establishing and defining their positions. In line with this view, Mil.R.Evid. 315(d)(3) provides that a military judge or magistrate may be empowered to authorize searches by "regulations prescribed by the Secretary of Defense or the Secretary concerned."[10] However, apparently Mil.R.Evid. 315(d)(2) contemplates that in some instances a military magistrate or judge might also have authority to order searches because he is "[a]n impartial person" to whom a commander has delegated his power to grant search authorizations. *See* Analysis of Rule 315(d)(2); Saltzburg, Schinasi, and Schlueter, *Military Rules of Evidence Manual*, 146, 149 (1981).[11]

We recognize also that sometimes—because of time constraints such as those involved in the potential disappearance of witnesses or destruction of evidence—an investigator may need to perform a search without delaying to seek authorization from a commander or magistrate. There is am-

---

9. The Air Force does not use the terminology, "Acting Commander." *See* para. 28, Air Force Regulation 35–54 (November 22, 1976). However, the concept is useful for purposes of the present discussion.

10. Conceivably, it could be argued that the military judges and magistrates are being delegated authority from the President through the Secretary of Defense or the Service Secretaries. However, this rationale does not seem to have been articulated in the Rules.

11. If a military judge or magistrate seeks to invoke a delegation theory, such a delegation to an acknowledged "judicial officer," whose role is well-defined by service regulations, can be more readily sustained as reasonable than a delegation to a member of the commander's staff, whose role typically will be more ambiguous.

ple precedent—civilian as well as military—upholding searches by law enforcement agents who have probable cause but, because of "exigent circumstances," cannot delay to seek formal authorization for the search. *See United States v. Acosta*, 11 M.J. 307 (C.M.A.1981). Of course, the validity of such searches does not depend on any delegation of authority, but instead on the reasonableness of such investigative activity.

If, despite the greater accessibility of commanders through portable two-way radios and other communications facilities and also despite the means for reducing their burdens in disposing of search authorizations, commanders are still too busy to handle this task and so must delegate their search authority, then perhaps Congress should reexamine the role of commanders in military justice. After all, commanders are called upon to perform personally many other tasks in the administration of criminal law which appear only slightly more delicate or vital than their decisions whether to interfere with service members' privacy by allowing searches and seizures. The Government justifiably seeks support in some of our earlier cases in which delegation of search authority was upheld. *See, e. g., United States v. Albright*, 7 M.J. 473 (C.M.A.1979); *United States v. Drew*, 15 U.S.C.M.A. 449, 35 C.M.R. 421 (1965); *United States v. Doyle*, 1 U.S.C.M.A. 545, 4 C.M.R. 137 (1952). However, for the most part those cases predated our decisions in cases like *United States v. Stuckey, United States v. Middleton*, and *United States v. Ezell*, all *supra*, where the Court reexamined the rationale for a commander's authority to order searches and seizures in the military. Furthermore, the expansion in successive Manuals of the permissible delegations of authority by commanders—unaccompanied by specific guidelines or standards for such delegation—has focused our

attention more clearly on the dangers to personal rights implicit in the delegation theory.[12] Accordingly, we conclude that a search performed by permission of a commander's delegee—other than a military judge or magistrate—does not meet Fourth Amendment requirements of reasonableness.

### III

■ During the oral argument of this case, attention was called to the plight of a commander who, because of his intimate participation in the investigation, has disqualified himself to issue a search warrant. *See United States v. Rivera*, 10 M.J. 55 (C.M.A.1980). Of course, he may transmit the request for a search to a higher echelon of command—à task that can now be performed more readily because of the frequent use in the military of two-way radios. Also, if a military magistrate is available, he may refer the request to that magistrate. However, the suggestion has been made that, under such circumstances, the commander also should have the alternative of delegating his authority to some neutral and impartial person. An obvious difficulty is that, if the commander is disqualified because of personal involvement in ferreting out the facts, there may be some question as to the neutrality and detachment of a subordinate to whom is delegated the task of determining whether the commander has made an adequate investigation.[13] In this situation, the resolution of the problem that best meets the constitutional mandate is to analogize the commander's disqualification to perform this task to his absence or unavailability. Thus, just as other duties devolve upon a deputy commander or vice commander when, for some reason, a commander is unavailable, so, too, the responsibility to act on a request for search should in such a situation be viewed as devolving

---

12. Judge Ferguson remarked on such dangers in his dissent in *United States v. Drew*, 15 U.S.C.M.A. 449, 456, 35 C.M.R. 421, 428 (1965).

13. Compare the provisions in the Uniform Code to the effect that a general or special

court-martial should not be convened by someone who is subordinate to an accuser. Articles 1(9), 22(b), and 23(b), UCMJ, 10 U.S.C. §§ 801(9), 822(b), and 823(b), respectively.

on the subordinate who exercises command when the commander is absent.[14]

## IV

Colonel Plowden, who had become Base Commander of Ramstein Air Base on August 11—the day before the search authorization—was with the Wing Commander at some nearby military installations when Special Agent Murphy of the Office of Special Investigations (OSI) requested permission to search. Apparently, the installations being visited by Colonel Plowden were satellites of Ramstein and therefore were also within his command responsibility. One of the satellite installations was only eight kilometers from Ramstein. In view of Colonel Plowden's absence from Ramstein Air Base, had Lt. Col. Boe become the "acting commander" for purposes of authorizing a search and seizure?

Among the cases involving a contention that a search had been authorized by an acting commander is *United States v. Murray*, 12 U.S.C.M.A. 434, 31 C.M.R. 20 (1961). There we concluded that a warrant officer had been the accused's unit commander at the time of the search authorization, even though no formal order had earlier been promulgated transferring command to him from a lieutenant whose assumption of command had been announced by published orders and the lieutenant was in the same geographical area and was only temporarily absent from the headquarters. The regulatory provision for the assumption of command by the next senior officer, in our view, was "predicated, not upon the availability of the individual who has relinquished his responsibilities, but upon the need of the services to have authority exercised over units in a continuous stream in order that missions will be executed without fail."[15] *Id.* at 438, 31 C.M.R. at 24.

In *United States v. Azelton*, 49 C.M.R. 163 (A.C.M.R.1974), *pet. denied*, 23 U.S.C. M.A. 628, 49 C.M.R. 889 (1974), the Army Court of Military Review found a devolution of command upon a colonel even when two senior officers were in their quarters a short distance away. In interpreting *United States v. Murray, supra*, the Court of Military Review correctly stated, "Court of Military Appeals cases make more of a functional than a geographic and temporal measure of 'absence' of a commander." 49 C.M.R. at 166. Similarly, in *United States v. Bradley*, 50 C.M.R. 608 (N.C.M.R.1975), the Navy Court of Military Review upheld a search authorized by the executive officer of a ship at a time when the commanding officer of the ship was ashore and his exact whereabouts or time of return was unknown. On the other hand, the Army Court of Military Review did not uphold an authorization to search granted by a company executive officer, when the company commander was attending a meeting only 50 to 100 yards away and there was no showing why he could not have been contacted. *United States v. Gionet*, 41 C.M.R. 519 (A.C.M.R.1969).

In the case at hand, Colonel Plowden was not at Ramstein Air Base when the search request was made. Apparently, he left with Lt. Col. Boe his portable two-way radio[16]—an instrument which under current military practice is somewhat like the mace or scepter of ancient times as a symbol of authority. At that time and place, Lt. Col. Boe *was* the person making command decisions. Moreover, under the prevailing circumstances, he was the officer whom foreseeably an investigator—in this case Special Agent Murphy of OSI—would have approached to obtain a search authorization.

---

14. This devolution of command where the commander is disqualified by interest is admittedly an imperfect solution since the deputy or vice commander might be influenced by the involvement of the superior. However, this solution seems justifiable under a "rule of necessity". *Cf. United States v. Will*, 449 U.S. 200, 101 S.Ct. 471, 480, 66 L.Ed.2d 392 (1980).

15. We relied on *United States v. Williams*, 6 U.S.C.M.A. 243, 19 C.M.R. 369 (1955), and *United States v. Bunting*, 4 U.S.C.M.A. 84, 15 C.M.R. 84 (1954), which dealt with assumption of command and devolution of command as they related to the power to convene courts-martial and refer charges for trial.

16. The radio is sometimes referred to as the "brick."

■ Proceeding from the basic premise that a commander may authorize searches because it is reasonable that he possess such authority in light of his overall responsibilities, we conclude that it also is reasonable for a search authorization to be granted by a person who is exercising general command responsibilities when the search authorization is requested. In short, as noted by the Court of Military Review in *United States v. Azelton, supra,* we are chiefly concerned with the functional aspects of command. Thus, we need not examine the minutiae of Service directives which concern devolution of command. *See, e. g.,* Air Force Regulation 35–54. Since, at the time and place in question, Lt. Col. Boe was functioning as the commander and was treated by others as the commander in connection with the command decisions then being made, we are satisfied that he also may be equated with Colonel Plowden in connection with his authorizing the search of appellant's off-base quarters.

### V

■ Occasionally, we have given only prospective application to a decision, especially in connection with questions of search and seizure. *United States v. Stuckey, supra.* Therefore, we need not repeat here our rationale for non-retroactive judicial decisions in some situations. Suffice it to say that, in light of the Manual provisions and some of the earlier decisions of the Court, there has been justifiable reliance by law enforcement personnel and commanders on the rule that search authority can be delegated—a rule that we now conclude cannot be sustained. Accordingly, as to other military searches performed prior to the date of the issuance of our mandate in the case at bar, we shall not hold that any fruits were inadmissible merely because the search was authorized by a person to whom the commander had delegated the authority to order searches.

1. I note that the Chief Judge observed in his treatise on military law that a commanding officer could delegate his authority to order searches. Everett, *Military Justice in the Armed Forces of the United States* 101 (1956).

### VI

The decision of the United States Air Force Court of Military Review is affirmed.

Judge FLETCHER concurs.

COOK, Judge (concurring in part and dissenting in part):

Paragraph 152, Manual for Courts-Martial, United States, 1969 (Revised edition), specifically authorizes a commanding officer to delegate his authority to order searches. *Accord,* para. 152, Manual for Courts-Martial, United States, 1951. Today, the majority reject this provision as being contrary to the Uniform Code of Military Justice and the Fourth Amendment to the United States Constitution. Thus, they overrule almost 30 years of precedent of this Court. *United States v. Doyle,* 1 U.S. C.M.A. 545, 4 C.M.R. 137 (1952); *accord, United States v. Drew,* 15 U.S.C.M.A. 449, 35 C.M.R. 421 (1965); *United States v. Weaver,* 9 U.S.C.M.A. 13, 25 C.M.R. 275 (1958).[1] As recently as *United States v. Bowling,* 8 M.J. 76 (C.M.R.1979), and *United States v. Albright,* 7 M.J. 473 (C.M.A.1979), the Court rejected an argument that a commander could not delegate this authority to a subordinate. The power to delegate was retained in Mil.R.Evid. 315(d)(2). In my opinion, the majority's analysis is void of logic and legal precedent. Therefore, I am compelled to register my dissent.

In *United States v. Ezell,* 6 M.J. 307, 316 (C.M.A.1979), the principal opinion observed that Congress had not acted to designate "a judicial authority . . . to fulfill the warrant requirements of the Fourth Amendment." As the Uniform Code did not address the matter, the President properly exercised his authority under Article II, United States Constitution, irrespective of his powers under Article 36, Uniform Code of Military Justice, 10 U.S.C. § 836.[2] In *United States*

2. Any doubt as to the authority of the President to prescribe pretrial procedural rules was laid to rest by P.L. 96–107, Title VIII, § 801(b), 93 Stat. 811.

v. *Fimmano*, 8 M.J. 197, 202 (C.M.A.1980), *reconsideration not granted by equally divided vote*, 9 M.J. 256 (C.M.A.1980), the Court recognized the authority of the President to act in the Fourth Amendment area by empowering various military officials to administer oaths. Even assuming that the President's power to promulgate paragraph 152 is derived solely from the Uniform Code, Congress has clearly stated:

> The President may delegate any authority vested in him under this chapter, and provide for the *subdelegation* of any such authority.

Article 140, UCMJ, 10 U.S.C. § 940 (emphasis supplied). Accordingly, if the Uniform Code is applicable to the issue under consideration, the President, by providing for subdelegation of the authority to order searches, has literally complied with Article 140.

The majority note that this Court has previously held that various powers are nondelegable. *United States v. Ryan*, 5 M.J. 97 (C.M.A.1978); *United States v. Bingham*, 3 M.J. 119 (C.M.A.1977); *United States v. Allen*, 5 U.S.C.M.A. 626, 18 C.M.R. 250 (1955). *See United States v. Newcomb*, 5 M.J. 4 (C.M.A.1978); *United States v. Butts*, 7 U.S.C.M.A. 472, 22 C.M.R. 262 (1957); *United States v. Roberts*, 7 U.S.C.M.A. 322, 22 C.M.R. 112 (1956); *United States v. Greenwalt*, 6 U.S.C.M.A. 569, 20 C.M.R. 285 (1955). However, all of these cases were decided on the basis that Congress had specified that a particular official should take certain action and its intent was that such authority should not be delegated. *See United States v. Brady*, 8 U.S.C.M.A. 456, 24 C.M.R. 266 (1957), which involved a power set forth in the Manual for Courts-Martial. The language of *United States v. Butts, supra*, at 474–75, 22 C.M.R. at 264–65, is instructive:

> In *United States v. Sonnenschein*, 1 USCMA 64, 72, 1 CMR 64, we pointed out that the powers of suspension and remission are "nonministerial." In other words, they are discretionary. A discretionary power can be either delegable or

nondelegable. Whether it is the one or the other depends upon the terms of the grant of the power. See *Jay v. Boyd*, 351 U.S. 345, 76 S.Ct. 919, 100 L.Ed. 1242, Note 8, and dissenting opinion, Mr. Justice Frankfurter, page 372. The grant of the powers in issue is contained in the Uniform Code. Turning to its provisions, we find that whenever Congress conferred a power upon a particular authority in the court-martial system and intended that authority to give others the right to exercise the power, it expressly provided for such designation. Articles 9(a), 22(a)(6)(7), 23(a)(7), 24(a)(4), 71(b), 74(a), 135, and 140. See also *United States v. Roberts*, 7 USCMA 322, 326, 22 CMR 112; *United States v. Schuller*, 5 USCMA 101, 104, 17 CMR 101. Speaking of a similar situation in *United States v. Simmons*, 2 USCMA 105, 107, 6 CMR 105, we said: "This singling out of specific officials for the exercise of the power is itself a weighty argument that Congress intended to limit the power to those designated."

Here, we have a specified power of delegation and the cited cases are clearly inapplicable. Accordingly, I find no inconsistency between paragraph 152 and the Uniform Code.

The Chief Judge notes in the majority opinion that our previous cases which upheld the power to delegate the authority to order searches "predated our decisions in cases like *United States v. Stuckey*, [10 M.J. 347 (C.M.A.1981)], *United States v. Middleton*, [10 M.J. 123 (C.M.A.1981)], and *United States v. Ezell*, [6 M.J. 307 (C.M.A.1979)]." 11 M.J. 378. If he means the paragraph 152 of the Manual must be ignored and the authority to authorize searches must be derived solely from the powers and responsibilities of the office of a commanding officer, I believe these cases support, rather than reject, the power of delegation. In *United States v. Stuckey, supra* at 361, the Chief Judge observed:

> [I]t seems perfectly clear that a military commander—no matter how neutral and

impartial he strives to be—cannot pass muster constitutionally as a "magistrate" in the strict sense.

But as regards the commander's power to authorize a search, he said at 360:

[T]he commander's long-recognized power to authorize searches within the area of his command is generally viewed as derived from and correlative with his position and responsibilities in the military community—which, of course, is "a specialized society separate from civilian society." *Parker v. Levy*, 417 U.S. 733, 743, 94 S.Ct. 2547, 2556, 41 L.Ed.2d 439 (1974). Accordingly, a commander's authorization of a search has never been equated with the judicial-type procedure which comes within the contemplation of the warrant clause of the Fourth Amendment.

While the Court has shown some reluctance to permit delegation of a judicial function where the Uniform Code has specified that it should be performed by a specified official, in his opinion in *Stuckey*, Chief Judge Everett asserted that a commanding officer is not a judicial official for the purpose of ordering a search. As I interpret the Chief Judge's analysis of the commanding officer's authority, it supports adherence to previous cases of the Court rather than a departure therefrom. However, in writing for the majority here, he seeks to rely on the responsibilities of a commander as a basis for empowering him to order searches. Thus, he reasons that subordinates are not so empowered because they are not vested with the same responsibility as a commanding officer. This analysis disregards the fact that a subordinate also has responsibilities in the military organization. I cannot assume, as does the Chief Judge, that the fact that those duties do not include the command of the entire organization would adversely affect the manner in which the subordinate discharges his responsibility.[3]

The majority also assert that paragraph 152 of the Manual is deficient because it does not establish any standards for delegation of the authority to order searches. Obviously, searches ordered by a delegee must meet the same standards as those authorized by a commanding officer as to the requisite probable cause and impartiality. The only distinction is the factual issue of whether the authority to order searches was delegated to the person who ordered the search. While the majority envision an insurmountable burden in this area, my experience on the Court convinces me that the issue is simply not that complicated. It certainly is no more complicated than the issue of whether the authorizing officer was an acting commander, which is discussed at length in the majority opinion. Indeed, delegation of authority is usually easily proven by the introduction into evidence of the order which delegated the authority to the subordinate. As to the status of the delegee, I foresee no lack of standards. That person must be impartial, which is the same standard applicable to a commanding officer. *See United States v. Ness*, 13 U.S.C. M.A. 18, 20 n. 1, 32 C.M.R. 18, 20 n. 1 (1962). This standard is also expressed as a requirement that the authorizing officer be neutral and detached. *United States v. Rivera*, 10 M.J. 55 (C.M.A.1980). Thus, searches ordered by delegees are judged by the same standards as searches ordered by commanding officers.

The majority enthusiastically embrace the procedure whereby searches are authorized by military judges and military magistrates. This position appears to be inconsistent with the majority's thesis that the authority to order searches is nondelegable. Contrary to the position taken in the majority opinion, neither the Uniform Code nor the Manual for Courts-Martial created military magistrates. While military judges are created by the Uniform Code, their specified authority does not extend beyond a court-martial proceeding. *See* Article 26,

---

**3.** For example, under the rationale of the majority, a Deputy Division Commander could not authorize a search as a delegee of the Division Commander, but a company commander within the division could authorize the search. I believe the deputy commander's responsibility exceeds that of the company commander.

UCMJ, 10 U.S.C. § 826. From where does this authority derive? An examination of Army Regulation 27–10 (C.15, Sept. 9, 1974) is informative. Paragraph 14–2 of that regulation authorizes military judges assigned to the United States Army Judiciary to issue search "warrants" under certain specified conditions. As to other military judges and military magistrates, it provides:

A military judge not assigned to the Trial Judiciary, having previously been granted general authority by an appropriate commander listed below, is authorized to issue search warrants upon probable cause with respect to the persons and property specified in paragraph 14–3b and located within the judicial circuit wherein he is assigned or on temporary duty, even though he may not be performing duties as a military judge in the trial of cases before courts-martial. The commanders of the following listed commands have general authority to authorize a military judge or military magistrate, assigned to their command or a subordinate command, to issue search warrants: [List omitted].

Thus, the authority of a military judge or a military magistrate to order searches is derived by a delegation of that authority from a commanding officer. Indeed, even for military judges assigned to the U.S. Army Judiciary, the authority to order searches is derived by regulation from the Secretary of the Army. This appears to be an irreconcilable conflict with the thesis that a commander cannot delegate his authority to authorize searches. Additionally, I note that under the present regulatory requirement a military magistrate must be a judge advocate. See, para. 16–3, AR 27–10 (C.17, Aug. 15, 1977). However, the Chief Judge observes that there is no constitutional requirement that a magistrate be a lawyer. Accordingly, it is possible, under the view of the majority opinion, to establish a magistrates' program which does not include lawyers or judge advocates. Both the magistrates who are lawyers and those who are not are members of the command of a convening authority. Therefore, even the magistrates' program involves a delegation of authority to order searches to a subordinate. What distinguishes the delegation to a subordinate who is several levels removed from a commander and the next subordinate commander? I submit there is no distinction. In the view of the majority, it is the responsibilities of command that empower a commanding officer to order searches. This basis of authority would support delegation of authority to the next subordinate level where the responsibilities are greater than a delegation several levels below (magistrates) where the responsibilities are fewer. If the majority opinion is willing to accept a delegation of authority pursuant to a regulation promulgated by the Secretary of the Army, why does it not accept such a delegation pursuant to an order (para. 152) which is promulgated by the President of the United States?

I have previously expressed the opinion that the means of authorizing searches, as set forth in paragraph 152, Manual, *supra*, have gained acceptance within the civilian community. *See* my separate opinion in *United States v. Fimmano, supra* at 206 and cases cited therein. Perhaps the majority are discontent with the functions that a commanding officer performs within the military justice system. Indeed, I note that the majority opinion invites Congress to reexamine the role of a commanding officer. However, personal disagreement with existing procedures does not justify alteration of them by judicial fiat. I am reminded of the Chief Judge's own words in *United States v. Stuckey, supra*, at 361 n. 19, wherein he remarked:

Just as a commander's power to authorize searches has deep roots in military custom, the authority of peace officers to arrest without a warrant has a common law vintage. There is—and should be—judicial reluctance to invalidate procedures supported by long established custom and extensive experience.

The commander's authority to delegate his power to order searches is likewise deeply rooted in the military justice system. As the United States Supreme Court recently reminded us:

The operation of a healthy deference to legislative and executive judgments in

the area of military affairs is evident in several recent decisions of this Court. *Rostker v. Goldberg,* —— U.S. ——, ——, 101 S.Ct. 2646, 2652, 69 L.Ed.2d 478 (1981). I would not change the existing power to delegate it by judicial decree. For the reasons stated, I believe the search was properly authorized as the officer involved had been delegated the authority to order searches.[4] Accordingly, I concur in the disposition ordered by the majority.

4. My disposition of this issue renders it unnecessary to decide whether the officer was also an acting commander. I disagree with the implication in the majority opinion that a delegation of authority does not survive a change of command.