UNITED STATES

v.

Rigoberto VARGAS, 557 13 1283, Corporal (E–4), U. S. Marine Corps.

NMCM 81 0990.

U. S. Navy-Marine Corps Court of Military Review.

Sentence Adjudged 25 Aug. 1980.

Decided 23 April 1982.

LT Richard K. Delmar, JAGC, USNR, Appellate Defense Counsel.

MAJ Charles Wm. Dorman, USMC, Appellate Government Counsel.

Before BAUM, Senior Judge, and ABERNATHY and KERCHEVAL, JJ.

KERCHEVAL, Judge:

Appellant was convicted at a general court-martial, military judge alone, of one specification of violating Article 134, 10 U.S.C. § 934, Uniform Code of Military Justice (UCMJ), for wrongfully taking and opening a United States Government envelope and check addressed and payable to another servicemember. The military judge sentenced appellant to confinement at hard labor for twelve months, total forfeitures, reduction to pay grade E–1, and a bad-conduct discharge. The findings and sentence as adjudged were approved by the convening authority.

The incriminating envelope and check were discovered under the driver's seat of appellant's automobile on 4 April 1980, during a random gate search at Marine Corps Air Station, Cherry Point, North Carolina. Appellant was apprehended following the discovery and taken to the Naval Investigative Service office where, after being advised of his Article 31, 10 U.S.C. § 831, UCMJ, rights, he confessed to committing the offense of which he was convicted. Appellant contends in his assignment of error that the military judge erred in allowing the introduction into evidence of the check and confession. We disagree and affirm.

I

Appellant first argues that the search of his automobile was unauthorized because it was conducted pursuant to Air Station Order P 5510.3c of 15 November 1977, which relies on the Internal Security Act of 1950, 50 U.S.C. § 797, and OPNAVINST 5510.45B. Appellant finds support in this contention from *United States v. Harris,* 5 M.J. 44 (C.M.A.1978), where the Court determined that 50 U.S.C. § 797 and OPNAVINST 5510.45B are applicable only to civilians and not servicemembers. *Harris* at 61. The Court, however, went on to conclude that "reliance on the statute and regulation is not necessary to sustain the gate search concept." *Id.* at 62. A gate search is valid as long as it is based upon the commanding officer's authority and responsibility for the security of his command. *Id.* *See also United States v. Poundstone,* 22 U.S.C.M.A. 277, 282, 46 C.M.R. 277, 282 (1973) (Darden, C. J., concurring). In reaching this conclusion, the Court in *Harris* found *U. S. Navy Regulations, 1973,* article 0702.1, to be helpful and cited the article to support the following statement concerning the commanding officer's authority:

By virtue of his position, the commander of a military installation has acquired unique responsibilities in connection with the health, safety, welfare, morale, and efficiency of those placed under his command. This is the result of the manifest necessity that his personnel be kept at peak efficiency in order that the performance of his mission will not be jeopardized. Navy Regulations recognize that his "responsibility ... for his command is [virtually] absolute" and that his "authority ... is commensurate with his responsibility."

*Harris* at 59. The inherent authority of a commander to conduct searches has recently been reaffirmed in *United States v. Kalscheuer,* 11 M.J. 373 (C.M.A.1981), where the Court states that "[p]ursuant to well-established military custom, commanding officers have long been empowered to permit the search of persons and property under their command." *Id.* at 374. In the instant case it is evident that the Commanding General of Marine Corps Air Station, Cherry Point, North Carolina, approved the search of appellant's automobile pursuant to this authority. (*See* Prosecution Exhibit 2).

## II

■ Appellant next contends that the search of his automobile was illegal because the teams conducting the search had discretion as to the *extent* of their search. Testimony at trial indicates that although guidelines were established that limited the discretion the searchers could exercise as to the extent of their search of the vehicles, (R.88), the searchers in fact exercised some discretion and searched selected vehicles with varying degrees of thoroughness. (R. 16). The record of trial, however, establishes that any discretionary deviations from the established guidelines were limited to the conducting of searches in a less extensive manner than authorized.

In *United States v. Harris, supra,* the Court held that for a gate search to be valid a procedure must be employed that completely removes the exercise of discretion from persons engaged in law enforcement activities. *Id.* at 65. Such a lack of discretion requires a "completely independent determination of times when the searches will be conducted, the method of selecting the vehicles to be stopped, the location of the operation, and the procedure to be followed in the event something is discovered." *Id.* (footnote omitted). It is evident, and appellant does not allege to the contrary, that these specific guidelines set out in *Harris* were complied with in the instant case. *Harris* does not attempt to limit the searcher's discretion as to the extent of the search of the randomly selected vehicle, except that it be reasonable so as not to infringe upon the constitutional rights of the servicemember. *Id.* at 66. It is imperative that once a vehicle is randomly selected for search, some discretion as to the extent of that search be permitted in order to meet the needs and contingencies of the situation. In the instant case the search was clearly reasonable and did not violate the rights of appellant. The incriminating evidence was discovered under the front seat of the vehicle, clearly a reasonable place for the searchers to look.

## III

■ Appellant presents two arguments contending that his confession should not have been admitted at trial. In light of our finding that the search was conducted in a lawful and constitutional manner, we reject appellant's contention that the statements are inadmissible because they were obtained as a result of an illegal search. We specifically find that our holding is in accord with the two recent Supreme Court cases of *Robbins v. California,* 453 U.S. 420, 101 S.Ct. 2841, 69 L.Ed.2d 744 (1981) and *New York v. Belton,* 453 U.S. 768, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981). *See, e.g., United States v. Ravine,* 11 M.J. 325, 329 (C.M.A.1981). We also find, contrary to appellant's assertion, that the confession was voluntary.

Accordingly, the findings and sentence as approved on review below are affirmed.

Judge ABERNATHY concurs.

BAUM, Senior Judge (dissenting):

I find that the terms of *United States v. Harris*, 5 M.J. 44 (C.M.A.1978) have been violated in this case because too much latitude in the manner of conducting the purported random gate searches was left to the discretion of the unsupervised and non-briefed individual military policemen who were tasked with conducting those searches.

In addition, I find the rationale applied by the United States Court of Military Appeals to a barracks health-and-welfare inspection in *United States v. Brown*, 12 M.J. 420 (C.M.A.1982), is equally applicable to the random gate "safety inspection/contraband search" here. As in *Brown*, the prosecution never called as a witness the individual who conducted the inspection/search of appellant's car. While a stipulation of his expected testimony was received, it did not fully reveal the need to look inside the two envelopes found under the seat in appellant's car in order to fulfill the purpose of the inspection/search. Here, too, there is no showing of criminality on the face of the seized check nor is any other reason shown which would justify seizure of the envelopes and the check. See *United States v. Brown, supra* at 423. As noted in *Brown*, health-and-welfare inspections are vulnerable to abuse.[1] *Id.* at 423. Random gate inspections are just as vulnerable and, in my view, the holding of the majority in this case opens wide the door to just such unchecked abuses. Again, as stated in *Brown*, bounds must be set and adhered to. As far as I can see, there were no limits set with respect to the search that was conducted in this case.

For these reasons, I find the search unlawful and the envelope discovered and seized to be inadmissible. Furthermore, I find the subsequent confession by appellant to be inadmissible as the product of the preceding search. *United States v. Hamilton*, 22 U.S.C.M.A. 209, 46 C.M.R. 209 (1973). Accordingly, I would set aside the findings of guilty and sentence and dismiss the Charge and its specification.

1. *See also United States v. Middleton*, 10 M.J. 123 (C.M.A.1981).